DEBORAH KRAVITZ (275661)
dkravitz@kamberlaw.com
KAMBERLAW, LLP
401 Center Street, Suite 111
Healdsburg, CA 95448
Telephone: (707) 820-4247

SCOTT A. KAMBER (*pro hac vice to be filed*)
skamber@kamberlaw.com
MICHAEL ASCHENBRENER (277114)
masch@kamberlaw.com
KAMBERLAW, LLC
201 Milwaukee St, Suite 200
Denver, CO 80246
Telephone: (303) 222-0281

*Attorneys for Plaintiff and putative Class*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| BEST COMPANIES, INC., individually and on behalf of a class of similarly situated individuals<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |

**INTRODUCTION**

1.     Plaintiff files this Class Action Complaint for Damages and Equitable Relief against Apple Inc. ("Apple," the "Company," or "Defendant") on behalf of Plaintiff Best Companies, Inc. ("Plaintiff" or "BCI") and all other non-natural persons ("NNPs") in the United States who purchased, owned, or leased one or more of Apple's Devices[1] (the "Class" as defined below) for unlawful and unfair business practices. The allegations in this Complaint are based on information and belief.

2.     Starting in or about January 2017, Apple installed Updates on Apple Devices that "throttled" or reduced the speed at which the phones operate, purportedly in order to extend the life of the Apple Device batteries.

3.     Apple did so by issuing "Updates" (10.2.1 and 11.2) to the Devices that purposefully degraded performance in order to have the batteries draw less power to run the Devices. Apple did not inform NNPs that the Updates would degrade phone performance.

4.     The throttling of Devices that Apple introduced via periodic Updates to its iOS device software was intended to address a defect in the design of the Devices: the fact that the Devices' batteries lacked the capacity and power delivery to keep up with the demands placed upon them by Apple's hardware and software (the "Defect").

5.     On December 20, 2017, Apple tacitly admitted that the Updates intentionally slowed the Devices (the "Admission") stating, in relevant part:

> Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices.  Lithium-ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components.
>
> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions.  We've now extended that feature to iPhone 7, with iOS 11.2, and plan to add support for other products in the future.[2]

---

[1] As used herein, the term "Devices" means the following products designed and marketed by Apple for sale: the iPhone SE, iPhone 6, iPhone 6s, iPhone 6 Plus, iPhone 6s Plus, iPhone 7, and the iPhone 7 Plus.

[2] Shara Tibiken, "Apple admits slowing older iPhones, says it's to prevent battery issues." *C/Net* (Dec. 20, 2017), *available at* https://cnet.co/2GIXIEn (visited Oct. 5, 2020).

6.      On December 28, 2017, Apple issued an "Apology" of sorts:

iOS 10.2.1 (released January 2017) includes updates for previous models of iPhone to prevent them from unexpectedly shutting down. This includes a feature for iPhone6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, and iPhone SE to dynamically manage the instantaneous performance peaks, only when needed, to prevent the device from unexpectedly shutting down. This capability was also extended to iPhone 7 and iPhone 7 Plus with iOS 11.2, and we will continue improving our power management feature in the future. This feature's only intent is to prevent unexpected shutdowns so that the iPhone can still be used.

This power management works by looking at a combination of the device temperature, battery state of charge, and battery impedance. Only if these variables require it, iOS will dynamically manage the maximum performance of some system components, such as the CPU and GPU, in order to prevent unexpected shutdowns. As a result, the device workloads will self-balance, allowing a smoother distribution of system tasks, rather than larger, quick spikes of performance all at once. In some cases, a user may not notice any differences in daily device performance. The level of perceived change depends on how much power management is required for a particular device.

In cases that require more extreme forms of this power management, the user may notice effects such as:

- Longer app launch times

- Lower frame rates while scrolling

- Backlight dimming (which can be overridden in Control Center)

- Lower speaker volume by up to -3dB

- Gradual frame rate reductions in some apps

- During the most extreme cases, the camera flash will be disabled as visible in the camera UI

- Apps refreshing in background may require reloading upon launch.[3]

7.      Plaintiff was harmed by Apple's throttling of the Devices because Apple intruded upon Plaintiff's purchased iPhones, in violation of state and federal law.

## JURISDICTION AND VENUE

8.      As set forth herein, this Court has general jurisdiction over Apple and original jurisdiction over Plaintiff's claims.

9.      The Court has federal question subject-matter jurisdiction pursuant to 2 U.S.C. § 1331, because Plaintiff alleges that Apple violated the Computer Fraud and Abuse Act, 18

---

[3] Apple, iPhone and Battery Performance, Understand iPhone performance and its relation to your battery (Dec. 31, 2017), *available at* https://bit.ly/3nmsRP5 (visited Oct. 5, 2020).

1   U.S.C. § 1030, *et seq*.

2      10.      This Court also has subject-matter jurisdiction pursuant to the Class Action

3   Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in

4   controversy exceeds the sum of $5,000,000, and Apple is a citizen of a State different from that of

5   at least one Class member.

6      11.      This Court also has supplemental jurisdiction over the state law claims pursuant to

7   28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

8      12.      Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because

9   Apple's principal place of business is located in this District and substantial parts of the events or

10  omissions giving rise to the claims occurred in the District. Venue is also proper in this Court

11  because Apple is located here, the causes of action arose here, and as Apple has admitted, the

12  Devices at issue herein have always been designed by Apple in this District.

13                                          **PARTIES**

14     **A.      Plaintiff**

15     13.      Plaintiff BCI is a business incorporated/organized in the State of Oklahoma, with

16  its primary place of business located in Oklahoma City, Oklahoma.

17     14.      Plaintiff acquired at least 10 iPhone models 6, 6 Plus, 7, or 7 Plus during the period

18  September 2014 through March 2017.  These phones were purchased through either its carrier,

19  AT&T, or the Apple Store.

20     15.      Prior to the above Device purchases, Plaintiff did not know, nor could it have

21  known through reasonable diligence, of the Defect in the Devices that it purchased.

22     16.      Plaintiff instructed its employees to update their software regularly and provided

23  assistance to its employees as needed. All phones owned by BCI downloaded and installed iOS

24  10.2.1 on the Devices during the first quarter of 2017.

25     17.      Based upon a BCI officer's conversations with employee users of the purchased

26  iPhones identified above, a degradation of performance of these devices occurred after the Update

27  to iOS 10.2.1.

28

18.     Apple intruded upon Plaintiff's Devices, in violation of state and federal law when it secretly Updated the Devices to reduce performance.

**B.     Defendant and Its Relevant Corporate Structure**

19.     Apple Inc. ("Apple"), is a corporation that was created under the laws of the State of California, and has its principal place of business in Cupertino, California. Apple is the world's largest information technology company by revenue and the world's third largest mobile phone developer. There are currently over one billion Apple products in active use worldwide.

20.     Throughout the events at issue here, Apple has operated through its directors, officers, employees and agents, and each such person acted within the course and scope of such agency, representation or employment and was acting with the consent, permission and authorization of Apple.

**CHOICE OF LAW: DESIGNED BY APPLE IN CUPERTINO, CALIFORNIA**

21.     By using their Devices or downloading a software update, Device users are presented with the iOS Software License Agreement. There are separate Software License Agreements for each version of iOS software including: iPhone iOS 3.1, iOS 4.1, iOS 5.0, iOS 5.1, iOS 6.0, iOS 7.0, iOS 8.0, iOS 8.1, iOS 9.0, iOS 9.1, iOS 10, iOS 11, and iOS 11.2.The agreements do not differ in material terms, and provide that California law governs the agreements:

> **Controlling Law and Severability**. This License will be governed by and construed in accordance with the laws of the State of California, excluding its conflict of law principles. This License shall not be governed by the United Nations Convention on Contracts for the International Sale of Goods the application or which is expressly excluded. If you are a consumer based in the United Kingdom, this License will be governed by the laws of the jurisdiction of your residence. If for any reason a court of competent jurisdiction finds any provision, or portion thereof, to be unenforceable, the remainder of this License shall continue in full force and effect.

22.     To the extent they apply, the iOS Software Licensing Agreements are effective at the point of sale—as soon as the customers turn on their Devices—and are thus part of the benefit of the purchasers' bargain. Without iOS, for which there is a purported licensing agreement, the Devices simply do not work.

23.     Apple elected to have California law govern all claims and disputes concerning the common software required to operate all of the Devices at issue in this lawsuit. Accordingly, the application of California law to all of the class members' claims is fair, appropriate, and an election affirmatively made by Apple consistent in its Agreements.

24.     By using their Devices, purchasers are told that they agree to be bound by California law as purchasers must run Apple's proprietary iOS to use their Devices.

25.     Beyond Apple's election of California law to govern the claims described herein, the State of California has a significant interest in regulating the conduct of businesses operating within its borders. California, which seeks to protect the rights and interests of California and all residents and citizens of the United States against a company headquartered and doing business in California, has a greater interest in the claims of Plaintiff and class members than any other state or country and is most intimately concerned with the claims and outcome of this litigation.

26.     The principal place of business of Apple, located at 1 Apple Park Way (formerly 1 Infinite Loop) in Cupertino, California, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including its marketing, software development, and major policy, financial, and legal decisions. As admitted by Apple in its Form 10-K for the fiscal period ended September 28, 2019 (the "2019 Form 10-K"), "most of the Company's key personnel" are located in Silicon Valley, California.

27.     Indeed, Apple's Devices proudly display that they were "designed by Apple in California."

28.     Apple's response to the allegations herein, and corporate decisions surrounding such response, were made from and in California.

29.     Apple's breaches of duty to Plaintiff and the Class emanated from California, and the Devices at issue herein were designed and tested in California.

30.     Application of California law with respect to Plaintiff's and Class members' claims is neither arbitrary nor fundamentally unfair because California has a state interest in the claims of the Plaintiff and the Class based upon Apple's significant and ongoing contacts with California.

31.     Under California's choice of law principles, which are applicable to this action, the common law of California applies to the common law claims of all class members. Additionally, given California's significant interest in regulating the conduct of businesses operating within its borders, California's consumer protection laws may be applied to non-resident Plaintiff and class members.

**SUBSTANTIVE ALLEGATIONS**

32.     On January 23, 2017, Apple issued a press release announcing the release of iOS 10.2.1. Shortly thereafter, Apple caused the issuance of a notification to appear on the Devices advising that iOS 10.2.1 was available for installation. As alleged herein, iOS 10.2.1 was designed by Apple to throttle the Devices, contrary to what Apple stated about the update.

33.     Apple represented as follows concerning the update on the Devices:



34.     On December 2, 2017, Apple announced the release of iOS 11.2.0. Shortly thereafter, Apple caused the issuance of a notification to appear on the Devices advising that iOS 11.2.0 was available for installation. Apple represented as follows concerning the update:

35.     As alleged herein, iOS 11.2.0 was another update designed to throttle the Devices.

36.     Just weeks after the issuance of iOS 11.2.0, Apple was forced to issue the Admission, followed eight days later by the Apology.

**A.    Apple Compounded the Defect by Stressing Device Batteries with Power-Hungry Software.**

   *1.    iOS Updates*

37.     Apple's battery designs were inadequate because they could not handle the power demands of the software Apple mandated users to run.

38.     When Apple releases a new operating system, it pushes the software directly to the customer's device through a red signal with a number in it that notifies users of the existence of an available "software update."

39.    Within minutes, device owners can click on the prompt and download the new operating system.

40.    It is very difficult, if not impossible, for typical Apple owners to avoid downloading an iOS update. As one site explains:

> The bad news is there's no easy way to stop iOS from repeatedly throwing this alert at you....
>
> To encourage people to get on the latest version of iOS, Apple implemented a feature called Automatic Downloads. This download updates in the background, and once it is downloaded, you are pushed to install it. Apple typically installs the software update at night when the iPhone, or iPad, is plugged in and charging.[4]

41.    Turning off the updates and the daily push notifications requires users to delve deep into their settings or to forgo WiFi, which ordinary customers would not do.[5]

---

[4] Lucy Hattersley, "How to Stop iOS Nagging You to Update to the Latest Version," MacWorld (July 6, 2016), (available at https://bit.ly/30DLT9J).
[5] Hattersly, How to Stop iOS Nagging You, *supra*.

**B.      The Release of iOS Was Secretly Designed to Camouflage the Defect**

42.      In the Fall of 2016, iPhone users reported increasing occurrences of sudden shutdowns of iPhones 5 and 6 running versions of iOS 10 software, including when their devices indicated that battery life was still at or above 30%.[6] Even the inventor of the iPod, Tony Fadell, voiced concern about this problem, commenting that the battery on his own iPhone kept shutting down despite having a significant amount of charge left in it: "It's happening to me every other day-especially while using the mapping app. Have to always carry an external battery to revive it"[7] and "Issue with battery/shutdown algorithms?!"[8]

43.      As Apple was aware, and confirmed with the diagnostic information it obtained, the shutdown problem was the foreseeable consequence of a serious Defect in Apple's iPhones. The speed for which Apple's products are known and marketed to purchasers comes from powerful processing units which are supposed to perform calculations and render graphics on its smartphones at top speeds. As these processing units become faster and more powerful, however, they also require more power from the phone's battery.

44.      A further complication is that the resistance of lithium-ion batteries used in iPhones increases as the cells age, resulting in both a reduction in overall battery capacity and a reduction in the battery's ability to produce peak power output.[9]

45.      The amount of power that the processing unit requires during its daily operation varies: sometimes very little; sometimes a great deal; and the battery should be designed and capable of producing enough peak power to keep pace with even the processor's highest demands. A battery and processor must be designed such that even as the battery ages and loses performance, it will still be capable of meeting the processor's peak power demands for years to come.

---

[6] Apple Discussion Thread, https://discussions.apple.com/message/30989226?start=165&tstart=0 (last visited Oct. 5, 2020).
[7] Tony Fadell Twitter Comment, (Nov. 30, 2016), https://twitter.com/tfadell/status/804215290871607296.
[8] Tony Fadell Twitter Comment, (Nov. 30, 2016), https://twitter.com/tfadell/status/804232051595640833.
[9] Apple, iPhone Battery and Performance, https://support.apple.com/en-us/HT208387 (June 15, 2018) (last visited Oct. 5, 2020).

46.     Electronics manufacturers like Apple are aware of this fact and thus must design batteries to be more powerful than they need to be so that as they grow weaker, they still have the ability to meet the processor's peak power demands.

47.     Apple's iPhone 6, for example, uses Apple's proprietary A8 System on a Chip ("SoC") as its processor. This processor has low-power cores and high-power cores. The low power cores perform most of the day-to-day functions of the iPhone, and the high-power cores handle more graphically intensive activities such as gaming, recording and editing video, running certain applications at other times.[10]

48.     When the high-power cores are active, they can draw peak power from the battery, which the battery should be capable of meeting for the lifetime of the device.[11] But when the battery ages and is unable to deliver the peak power demanded by the device's processor, the device switches off and will not turn on again until the device is connected to a charger.

49.     The shutdown problem iPhone users were experiencing in Fall 2016 thus resulted from a significant Defect: the battery was not designed with enough power to meet the peak demands of the phone's processor as the battery aged. The result was that iPhones seemed to operate as designed when new, but as early as a few days or months, began to cease functioning, i.e., switching off at random intervals, when the iPhone processor required too much power of its flagging iPhone battery.

50.     On January 23, 2017, Apple released iOS 10.2.1 as a seemingly routine update of its operating system.

51.     The alert to download iOS 10.2.1 stated that the update included "bug fixes" and improvements in device security. A depiction of the original iOS 10.2.1 notification on an iPhone is set forth below:

---

[10] See, e.g., Mike Wuerthele, "'A11 Fusion' in iPhone X appears to be a six core processor, according to iOS 11 leak," Apple Insider (Sept. 10, 2017), https://appleinsider.com/articles/17/09/10/a11-fusion-in-iphone-x-appears-to-be-a-six-core-processor-according-to-ios-11-leak; Ryan Smith, "Analyzing Apple's A8 SoC: PowerVR GX6450 & More," AnandTech (Sept. 10, 2014), https://www.anandtech.com/show/8514/analyzing-apples-a-soc-gx6650-more.
[11] Reddit Thread, PSA: iPhone slow: Try replacing your battery! https://www.reddit.com/r/iphone/comments/7inu45/psa_iphone_slow_try_replacing_your_battery/



52.     Sometime in February 2017, Apple added to its "Read Me" notes the following statement to be displayed on users' iPhones with the software upgrade: iOS 10.2.1 "also improves power management during peak workloads to avoid unexpected shutdowns on iPhone."[12]

53.     On or about February 23, 2017, Apple issued a statement that "[w]ith iOS 10.2.1, Apple made improvements to reduce occurrences of unexpected shutdowns that a small number of users were experiencing with their iPhone."[13]

54.     Throughout 2017, however, Apple failed to inform customers that the "fix" to the shutdown problem in iOS 10.2.1 came with a significant – and undisclosed – tradeoff: the update artificially slowed down the processors in Apple's Devices. The software change Apple introduced with iOS 10.2.1 concerns the "*powerd*" system, short for "power daemon," which controls CPU and GPU speed and power.[14]   In computer science parlance, Apple concealed within the iOS updates secret commands that "underclocked" the processors in the affected phones, causing them to perform calculations across the board at a slower rate than the hardware was capable of supporting, and slower than they had operated before the iOS updates.

[12] Apple Support, Download iOS 10.0-10.3.3 Information, https://support.apple.com/kb/d11893?locale+en_US; *see also* Ex. 2 ((Feb. 2, 2018 Letter from C. Hogan to Committee on Energy & Commerce, U.S. House of Representatives).
[13] Matthew Panzarino, "Apple says iOS 10.2.1 has reduced unexpected iPhone 6s shutdown issues by 80%," Tech Crunch (Feb. 23, 2017), https://techcrunch.com/2017/02/23/apple-says-ios-10-2-1-has-reduced-unexpected-iphone-6s-shutdown-issues-by-80/.
[14] Michael Potuck, "Geekbench developer links iPhone performance issues to battery age and iOS updates," 9 to 5 Mac (Dec. 18, 2017), http://9to5mac.com/2017/12/18/iphone-battery-performance-issues/.

55.     Running at a slower rate after the update, the processors in Apple's Devices would demand less power during peak operation. This diminished requirement for peak power would reduce and eliminate instances where the processor would outpace its battery, meaning that even in their weakened condition, the older batteries could supply enough peak power to meet the now reduced demands of the processors. Although this "fix" would prevent outright shutdowns, it would slow the customers' product and would scale, meaning as the batteries continued to grow weaker, the fix would continue to slow the processors so that demand never outpaced available power.[15]

56.     Neither the software update notification nor the software update release notes made any mention of this severe throttling effect. Apple concealed the problem; Apple concealed the solution; and Apple concealed that its solution would slow its customers' products.

57.     Users of Apple devices immediately began reporting reduced functionality, but there was no way for ordinary users to quantify these inklings or give them credence.

58.     As detailed herein, Apple had to continue releasing the "throttling" software in future versions of its iOS as new Devices went to market. On September 19, 2017, Apple released iOS 11. Immediately upon downloading iOS 11, existing Apple iPhone users began to experience a marked decrease in battery life on their Devices.

59.     One study of thousands of iPhone users within a monitored network compared the relative battery life of existing iPhones operating on iOS 10 versus iOS 11. The chart below shows the rate at which an iPhone with a fully charged battery lost battery power:[16]

---

[15] Reddit Thread, PSA: iPhone slow? Try replacing your battery!, *supra*.

[16] Liarna LA Porta, "iPhone users charged up over iOS 11 battery drain," Wander (Sept. 21, 2017), https://wandera.com/blog/ios-11-battery-drain/.



60.     This study revealed that existing iPhones operating on the iOS 10 software on average drained to 0% battery after 240 minutes (4 hours), whereas those operating on iOS 11 on average drained to 0% battery after only 96 minutes (just over 1½ hours). In other words, iOS 11 reduced the average iPhone's battery life by more than 60%. The study demonstrates the substantially increased power demands that Apple foist upon users' Devices through its iOS update.

61.     On December 9, 2017, a Reddit user by the handle "TeckFire" posted online benchmarks (measurements of the speed with which a phone's processor performs its computations) of his iPhone 6 operating on its old battery, and again after he had replaced it with a new battery. The iPhone's processor's speed had remarkably increased over 50%. This was incongruous: a new battery alone should not have had any impact on the processor speed.[17]

62.     Then on December 18, 2017, spurred by the ensuing discussion from TeckFire's post, John Poole, a software engineer at Primate Labs, published a report based on an analysis of 100,000 iPhones and concluding that the decrease in performance of the affected iPhones was caused by the iOS 10.2.1 and iOS 11.2 updates, and not the normal decreased function that would be caused by an aging battery.[18]

63.     Poole's analysis, which measures computer processing benchmarks, showed that after updating an iPhone 6s to an iOS 11, there were more "cluster points" where performance

---

[17] Reddit Thread, PSA: iPhone slow? Try replacing your battery!, *supra*.
[18] John Poole, "iPhone Performance and Battery Age," Primate Labs (Dec. 18, 2017) (available at https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/).

would slow down. The chart below shows phone performance before and after iOS updates that use a "throttling" program. Ordinarily, operations run smoothly until the battery dies. The "power management" update bottled up user performance at several points to limit the taxing of the battery:





64.     As Poole explained, "where the peaks happen represents the cluster of phones running at that particular performance level. And the height of the peaks (in blue) represents the relative frequency of benchmarks being performed at that performance level." This translates to a real loss of performance. For example, "the iPhone 6s is slowed down by nearly 60%." This "effectively turns the device's performance into that of a device 1-2 generations older."[19]

65.     A processor's speed is set, in part, by its clock speed which is measured in Hertz (Hz); the faster a processor is clocked, the faster a processor will normally perform tasks. For example, Apple advertises the iPhone 6 as having a processor speed of 1.4 GHz. But benchmark tests run by iPhone 6 users following the iOS 10.2.1 update revealed a processor speed of 600 MHz.

66.     As noted above, on December 20, 2017, Apple admitted to journalists that the iOS 10.2.1 and iOS 11 software updates included a throttling "feature" to slow down older iPhones.

67.     Apple also asserted: "We now believe that another contributor to these user experiences is the continued chemical aging of the batteries in older iPhone 6 and iPhone 6s devices, many of which are still running on their original batteries."[20]

68.     Other smart phone manufacturers, however, use similar lithium-ion batteries and have not experienced the same problems or resorted to throttling their phones' performance. Samsung, for example, guarantees its Galaxy S7 and Note & lithium-ion batteries will retain 95% of their capacity for at least two years; likewise, LG and Google warranty their smart phones' batteries for two years. Apple's warranty is shorter:

> Your battery is designed to retain up to 80% of its original capacity at 500 complete charge cycles. The one-year warranty includes service coverage for a defective battery. If it is out of warranty, Apple offers a battery service for $79, plus $6.95 shipping, subject to local tax.[21]

---

[19] Paulo Santos, "Apple: All You Wanted to Know on the iPhone Throttling Scandal," Seeking Alpha (Dec. 26, 2017), (available at https://seekingalpha.com/article/4133931-apple-wanted-know-iphone-throttling-scandal)
[20] Apple website, "A Message to Our Customers about iPhone Batteries and Performance," dated December 28, 2017, available at: https://www.apple.com/iphone-battery-and-performance/.
[21] Apple, Battery Service and Recycling, https://www.apple.com/batteries/service-and-recycling/ (last visited June 30, 2018).

69.     Apple has failed to address, or deny, the fact that it never asked its purchasers for their authorization to slow down their devices, nor informed them of this change.[22]  As a result, Plaintiff and other Class members were not notified when the power management technique was taking effect and were deceived into thinking that their devices were no longer capable of providing an adequate level of performance. Furthermore, they were not informed of Apple's own misgivings about the ability of its batteries to deliver on Apple's representations.

## C.     APPLE'S SOFTWARE LICENSE AGREEMENTS

70.     In order to use any Device sold by Apple, purchasers must use Apple's Proprietary iOS, which provides the code by which the Devices are operated. Without the iOS, the Devices do not work as they are intended.

71.      Apple claims that Device users agree to be bound by the iOS Software License Agreement by using their Devices or downloading software updates.[23]  Although the iOS Software License Agreements differ slightly based upon country in which the Device was sold and by version of iOS, the material terms are the same, and—with the exception of the United Kingdom and as previously described herein—provide that California law governs the agreement.

72.     Purchasers do not have a choice in selecting software for use on their Devices other than choosing the timing of a software upgrade; that is, purchasers must use Apple's operating system if they do not want to risk voiding the warranties that are provided with the sale of any Device.

73.     Accordingly, purchasers must use Apple's operating system, ostensibly subject to the terms of the iOS Software License Agreement, in order to use their Devices. The iOS Software License Agreement is thus part of the benefit of Plaintiff's and class members' bargains when purchasing Devices to the extent they apply.

---

[22] Apple website, "A Message to Our Customers about iPhone Batteries and Performance," dated December 28, 2017, available at: https://www.apple.com/iphone-battery-and-performance/.  See also Apple Maximizing Battery Performance Website, https://www.apple.com/batteries/maximizing-performance/ (last visited December 21, 2017) (emphasis added).

[23] Versions of those agreements for each iOS, incorporated herein by reference, are available at https://www.apple.com/legal/sla/ (last visited June 27, 2018).

74.     Because of this, to the extent they apply, the iOS Software License Agreements are part of the benefit of purchasers' bargain when purchasing the Devices, because purchasers expect that their Devices will *operate* as advertised and intended upon purchase of the Devices.

75.     Apple's iOS Software License Agreement attempts to include language that disclaims certain warranties; however, the agreement is one-sided, does not allow purchasers to negotiate separate terms, is an unconscionable contract of adhesion, and would essentially render purchasers' Devices incapable of operation—and from performing *any* function—if the operating software were corrupted, ceased to function, and restricted the use of Devices as they were intended and marketed to be used.

76.     Additionally, the limitation period in the iOS Software License Agreement prevents purchasers from discovering any Defect in operating software within the applicable and unenforceable limitations period even with the use of diligence as Apple is in the exclusive control of information regarding its proprietary software.

77.     Any limitations periods in the iOS Software License Agreement are thus unconscionable and unenforceable.

78.     Additionally, attempts to limit liability for software Updates that would cause Devices to become inoperable are unconscionable and unenforceable, as the operating software is *necessary* in order to use the Devices, and fully realize the benefit of purchasers' bargains.

### CLASS ALLEGATIONS

79.     Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiff seeks certification of the following class:

> All NNPs in the United States that purchased, owned, or leased any of the following Apple Devices: the Apple iPhone 6, 6s, 6 Plus, 6s Plus, SE, 7, and 7 Plus running iOS 10.2.1 or later (for iPhone 6, 6 Plus, 6s, 6s Plus, and SE devices) or iOS 11.2 or later (for iPhone 7 and 7 Plus devices), and who ran these iOS versions before December 21, 2017.

80.     **Numerosity: Federal Rule of Civil Procedure 23(a)(1)**. The members of the class are so numerous and geographically dispersed that individual joinder of all class members is impracticable. Plaintiff is informed and believes—based upon the publicly available information discussed herein—that there are millions of class members, making joinder impracticable. Those

individuals' identities are available through Apple's records, and class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

81. **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3)**. Apple has acted with respect to Plaintiff and the other members of the proposed Class in a manner generally applicable to each of them. There is a well-defined community of interest in the questions of law and fact involved, which affect all class members. The questions of law and fact common to the Class predominate over the questions that may affect individual class members, including the following:

   a.     Whether Apple designed updated iOS to address the Defect in a manner that slowed the performance of those Devices;

   b.     Whether and to what extent Apple disclosed the effect of iOS Updates to Device performance;

   c.     Whether Apple used the iOS modification to profit from Plaintiff and the other class members by inducing them to buy new replacements for their Devices;

   d.     Whether Apple's conduct has violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., and other applicable and similar laws of the United States and territories;

   e.     Whether Apple's conduct has violated the Consumer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq.;

   f.     Whether Apple's conduct has violated Cal. Penal Code § 502.

   g.     Whether Apple's conduct violated any additional federal law, law from any United States state or territory;

   h.     Whether compensatory or consequential damages should be awarded to Plaintiff and the other class members;

   i.     Whether punitive damages should be awarded to Plaintiff and the other class members;

   j.     Whether restitution should be awarded to Plaintiff and the other class members; and

1      k.      Whether other relief is appropriate, and what that relief should be.

2      82.     **Typicality: Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are

3  typical of other class members' claims because Plaintiff and class members were subjected to the

4  same allegedly unlawful conduct and damaged in the same way.

5      83.     **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4).**

6  Plaintiff is an adequate class representative because its interests do not conflict with the interests

7  of class members who it seeks to represent, Plaintiff has retained counsel competent and

8  experienced in complex class action litigation, and Plaintiff intends to prosecute this action

9  vigorously. The class members' interests will be fairly and adequately protected by Plaintiff and

10  its counsel.

11      84.     **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).**

12  The prosecution of separate actions by individual class members would create a risk of

13  inconsistent or varying adjudications with respect to individual class members that would establish

14  incompatible standards of conduct for Apple. Such individual actions would create a risk of

15  adjudications that would be dispositive of the interests of other class members and impair their

16  interests. Apple has acted and/or refused to act on grounds generally applicable to the Class,

17  making final injunctive relief or corresponding declaratory relief appropriate.

18      85.     Injunctive relief is particularly necessary in this case because: (1) Plaintiff desires

19  to purchase products with the same qualities and attributes as Apple advertised the Devices to

20  have; (2) if Apple actually manufactured Devices with the qualities and attributes as deceptively

21  represented, Plaintiff would purchase those Devices; (3) but Plaintiff does not have the ability to

22  determine whether Apple's representations are true concerning the Devices if they purchase such

23  Devices in the future. Indeed, Plaintiff, and putative class members, in the future will likely want

24  to purchase Devices manufactured by Apple; however, they expect that Apple will not

25  misrepresent or conceal defects in those Devices (or subsequently-released iPhones and iPads),

26  and will provide clear explanations regarding the Updates to those Devices (without concealing or

27  misrepresenting what the Updates will do).

28

86. **Superiority: Federal Rule of Civil Procedure 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Apple, so it would be impracticable for class members to individually seek redress for Apple's wrongful conduct. Even if class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION ON BEHALF OF THE CLASS

## COUNT I – VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT

### (18 U.S.C. § 1030, *et seq.*)

87. Plaintiff, individually and on behalf of the Class, repeats and alleges the above paragraphs as if fully alleged herein.

88. Apple caused Plaintiff and class members to download and install iOS Updates to their Devices without informing its customers that the iOS Updates contained code that would diminish Device performance, or throttle performance, in order to compensate for the undisclosed Defect in those Devices. Accordingly, Plaintiff and class members did not give permission for Apple to install iOS Updates onto their Devices—nor could they—as Apple did not provide material information to Plaintiff and class members regarding the updates.

89. Apple violated 18 U.S.C. § 1030(a) by knowingly causing the transmission of iOS software Updates to Plaintiff and class members' devices to access, collect, and transmit information to Devices, which are protected computers as defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and/or communication. By transmitting information to class members' Devices, Apple intentionally caused damage without authorization to class members' devices by impairing the ability of those Devices to operate as warranted, represented,

and advertised.

90.     Apple violated 18 U.S.C. § 1030(a)(5)(A)(iii) by intentionally accessing Plaintiff and class members' Devices—protected computers—without authorization, and as a result, caused damage to Plaintiff and class members' Devices by impairing the integrity of those Devices.

91.     Apple's conduct has caused loss to Plaintiff and class members in real, economic damages. Plaintiff and class members have additionally suffered loss by reason of these violations, in terms of added expense in operating their Devices, which have been throttled, or in the purchase of new, unthrottled Devices

92.     Unless Apple is restrained and enjoined, Apple will continue to commit such acts. Plaintiff's remedy at law is thus inadequate to compensate for these inflicted and threatened injuries, entitling Plaintiff to remedies including injunctive relief as provided by § 1030(g).

93.     Plaintiff and the Class seek all monetary and non-monetary relief allowed by law, including damages and punitive damages, an order enjoining the acts and practices described above, attorneys' fees, and costs under the Consumer Fraud and Abuse Act.

*COUNT II* – **VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**

**(Cal. Bus. & Prof. Code ¶ 17200, *et seq.*)**

94.     Plaintiff, individually and on behalf of the Class, repeats and alleges the above paragraphs as if fully alleged herein.

95.     In accordance with the liberal application and construction of the UCL, application of the UCL to all class members is appropriate, given that Apple's conduct as described herein originated from California, the Devices and iOS code were designed and originated in California, and Apple's uniform iOS Software License Agreement provides that California law shall apply.

96.     Apple's uniform iOS Software License Agreement governs the reach of the Class's claims because Apple's violations of the UCL were caused, in part, by the installation of certain operating software that throttled Device performance in order to further conceal the Defect in Apple's Devices.

97.     Apple is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

98.     Apple violated Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

99.     Apple's "unfair" acts and practices include:

a.      Knowingly designing, developing, manufacturing, advertising, and selling Devices with a significant Defect that result in the Devices not operating as intended, represented, or advertised under normal usage;

b.      Developing software Updates that merely hide the aforementioned Defect by throttling Device performance, resulting in the Devices operating at slower speeds than intended, represented, or advertised under normal usage;

c.      Concealing material information from purchasers regarding its Devices and the Defect so that purchasers were unable to make informed choices when purchasing the Devices;

d.      Concealing material information from purchasers regarding the Updates to operating software, so that purchasers would not nor could they know that the Updates throttled their Devices; and

e.      Using uniform, deceptive business practices such as throttling software to slow down Devices, requiring purchasers to spend additional money on replacement batteries or Devices as a result of the Defect.

100.    Apple has engaged in "unlawful" business practices by violating multiple laws, including the CLRA, Cal. Civ. Code §§ 1780, *et seq.*, and California common law.

101.    Apple's unlawful, unfair, and deceptive acts and practices include:

a.      Knowingly designing, developing, manufacturing, advertising, and selling Devices with a significant Defect that result in the Devices not operating as intended, represented, or advertised under normal usage;

b.      Developing software Updates that merely hide the aforementioned Defect by throttling Device performance, resulting in the Devices operating at slower speeds than intended, represented, or advertised under normal usage;

1          c.      Concealing material information from purchasers regarding its Devices and

2    the Defect so that purchasers were unable to make informed choices when purchasing the

3    Devices;

4          d.      Concealing material information from purchasers regarding the Updates to

5    operating software, so that purchasers would not nor could they know that the Updates

6    throttled their Devices; and

7          e.      Using uniform, deceptive business practices such as throttling software to

8    slow down Devices, requiring purchasers to spend additional money on replacement

9    batteries or Devices as a result of the Defect.

10    102.     Apple violated § 17200's prohibition against engaging in unlawful acts and

11    practices by engaging in false and misleading advertising and by omitting material facts from

12    purchasers of its Devices. As alleged more fully herein, Apple's marketing and sale of Devices,

13    and more specifically its failure to inform customers of the negative and throttling impact iOS

14    Updates would have on those Devices, violated Cal. Civ. Code § 1750, *et seq.*, common law, and

15    other statutory violations as alleged herein. Plaintiff reserves the right to allege other violations of

16    the law, which constitute other unlawful business acts and practices.  Apple's conduct is ongoing

17    and continues to this date.

18    103.     Apple violated § 17200's prohibition against unfair conduct by failing to inform its

19    customers about the Defect in the Devices; engaging in a pattern or practice of concealing those

20    facts and urging its customers to install regular updates to the iOS software to throttle those

21    devices—thereby depriving those Device owners of the performance of those devices that existed

22    at the time of purchase. This conduct is substantially injurious to purchasers, offends public policy,

23    is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct—crippling

24    Devices that are, in many instances, purchasers' lifelines—outweighs any alleged benefit.

25    Specifically, the utility gained by "upgrading" the iOS software of the Devices was outweighed by

26    the diminishment of the Device functionality. Apple engaged in this conduct at the expense of its

27    customers' rights when other, lawful alternatives were available (such as providing customers with

28    full information about the Devices and iOS software, or offering batteries replacements to

1    customers).

2        104.    Apple engaged in this conduct to gain an unfair commercial advantage over its

3    competitors, seeking to avoid public knowledge of the Defect in its Devices to avoid damage to its

4    sales or reputation. It withheld critical and material information from Plaintiff and class members,

5    competitors, and the marketplace, all to its unfair competitive advantage.

6        105.    California law prohibits unauthorized computer access and fraud pursuant to Cal.

7    Penal Code § 502.

8        106.    As a result of Apple's installation of iOS Upgrades on Plaintiff's and class

9    members' devices, Apple knowingly accessed and without permission altered, damaged, deleted,

10   destroyed, and otherwise used any data stored on Plaintiff's and class members' devices.

11       107.    Plaintiff and class members did not know that Apple's iOS Update would throttle

12   Device performance; accordingly, Apple did not have permission to install iOS Updates on class

13   members' Devices.

14       108.    Apple accessed and without permission altered and used data on class members'

15   Devices to execute a scheme or artifice to defraud the class members' by, among other things,

16   maintaining market share, convincing Plaintiff and class members to purchase new Devices, and to

17   otherwise ensure that Plaintiff and class members would not discover Apple's underlying fraud

18   regarding its omissions and misrepresentations regarding the Devices. As a result, Apple violated

19   Cal. Penal Code § 502.

20       109.    The iOS Updates led to the deterioration of the Devices and functionality of the

21   Devices as a whole, driving customers to purchase new Devices who would not have outlaid the

22   additional costs had they known the truth, and Apple not concealed the Device Defect.

23       110.    As a direct and proximate result of Apple's unfair, unlawful, and fraudulent acts

24   and practices, Plaintiff and class members were injured and lost money or property, including

25   from not receiving the benefit of their bargain in purchasing the Devices, and increased time and

26   expense in dealing with Device performance issues.

27       111.    Apple acted intentionally, knowingly, and maliciously to violate California's Unfair

28   Competition Law, and recklessly disregarded Plaintiff and class members' rights. Apple's

1  knowledge of the Devices' performance issues, and release of software to throttle phone

2  performance, put it on notice that the Devices were not as it advertised.

3      112.    Plaintiff and class members seek all monetary and non-monetary relief allowed by

4  law, including restitution of all profits stemming from Apple's unfair, unlawful, and fraudulent

5  business practices; declaratory relief; reasonable attorneys' fees and costs under California Code

6  of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

7              **COUNT III – CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT**

8                          **(Cal. Penal Code  § 502, *et seq.*)**

9      113.    Plaintiff, individually and on behalf of the Class, repeats and alleges the above

10  paragraphs as if fully alleged herein.

11      114.    In pushing Updates to its iOS to unsuspecting users of its Devices, Apple violated

12  the California Penal Code, Computer Data Access and Fraud Act, Cal Penal Code § 502, *et seq.*

13      115.    When Apple provided iOS Updates to purchasers—Plaintiff and class members—

14  they did not know, nor could they in the exercise of reasonable diligence know, that the software

15  Updates contained code that would throttle their Devices, designed solely to further conceal the

16  Defect in those Devices.

17      116.    Because purchasers did not know that the iOS Updates contained such throttling

18  code, they did not give Apple permission to access their Devices to alter the data or computer

19  systems on those Devices.

20      117.    Apple provided the iOS Updates to purchasers as part of a scheme or artifice to

21  defraud and deceive, because it provided the Updates to purchasers ***instead of*** informing them of

22  the Defect inherent on their Devices. Indeed, Apple could have informed purchasers that the issues

23  they were having with their Devices could be resolved via a battery replacement.  Apple instead

24  chose concealment, and throttling Devices via the installation of software that would do so.

25      118.    Apple offered iOS Updates to purchasers to throttle their Devices as a means to

26  encourage purchasers to purchase new devices, wrongfully obtaining money from those

27  purchasers.

28

119.    By offering the iOS Updates to purchasers, instead of revealing the truth, Apple disrupted or caused the disruption of consumer services when it improperly and unlawfully throttled users and class members' Devices. Plaintiff and class members did not consent to having their Devices throttled, and had they known that the iOS Updates would throttle their Devices, they would not have installed the iOS Updates.

120.    As a result of Apple's unlawful conduct, Plaintiff and class members were damaged in an amount to be determined at trial.

121.    Plaintiff and the Class seek all monetary and non-monetary relief allowed by law, including damages and punitive damages, an order enjoining the acts and practices described above, attorneys' fees, and costs under the CDAFA.

## COUNT IV – TRESPASS TO CHATTELS

122.    Plaintiff, individually and on behalf of the Class, repeats and alleges the above paragraphs as if fully alleged herein.

123.    California common law prohibits the intentional intermeddling with personal property in the possession of another, without consent, that results in either a) the deprivation of the use of that personal property; or b) the impairment of the condition, quality, or usefulness of the property.

124.    Apple impaired the condition, quality, and usefulness of Plaintiff and class members' Devices, or parts of them, without their knowledge or consent. Such acts constituted an intentional interference with the use and enjoyment of the Devices.

125.    Apple acted intentionally, because it knew that Plaintiff and class members were downloading computer software onto their Devices that reduced the performance of the Devices. Plaintiff and other class members only consented to the installation of iOS Updates that would improve performance, not diminish performance.

126.    Apple engaged in deception to gain access to the Devices and install new computer software or iOS Updates.

127.    Plaintiff and class members suffered actual damages as a result of Apple's actions in an amount to be determined at trial.

128.    Furthermore, Plaintiff seeks punitive damages because Apple's trespass was committed from wanton or malicious motives, or reckless disregard of the rights of Plaintiff and the Class, for the purpose of concealing the Defect.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter an order:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

B.    Enjoining Apple from continuing the unfair business practices alleged in this Complaint;

C.    Ordering Apple to pay actual and statutory damages (including punitive damages) and restitution to Plaintiff and the other class members, as allowable by law;

D.    Ordering Apple to pay both pre- and post-judgment interest on any amounts awarded;

E.    Ordering Apple to pay attorneys' fees and costs of suit; and

F.    Ordering such other and further relief as may be just and proper.

**JURY TRIAL**

Plaintiff hereby demands a trial by jury for all issues so triable.

Dated: October 6, 2020                 Respectfully submitted,

KamberLaw, LLC

By:
s/ Michael Aschenbrener
Michael Aschenbrener

One of the attorneys for Plaintiff, individually and on behalf of a class of similarly situated individuals